THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v
ROBERT F. BITTNER, Respondent.

Second Department, November 14, 1983

APPEARANCES OF COUNSEL

*John J. Santucci, District Attorney* (*Jeanette Lifschitz*
and *Richard G. Denzer* of counsel), for appellant.

*Peter M. Wolf* for respondent.

OPINION OF THE COURT

WEINSTEIN, J.

Respondent and his wife[1] were indicted for criminal possession of a controlled substance in the fifth degree emanating from an incident which occurred on or about January 31, 1981, when, acting in concert with another person, they allegedly knowingly and unlawfully possessed a quantity of Phencyclidine (i.e., angel dust) with intent to sell same. Following a hearing upon defendants' motion to suppress certain items of physical evidence seized from them at the time of their arrest and certain statements made by respondent to the police, the motion was, in all respects, granted. The validity of the order of suppression as to respondent is the subject of this appeal.

1. The case against respondent's wife was dismissed after rendition of the order suppressing the physical evidence and statements at issue. The case against the third party with whom they had allegedly acted in concert had been previously dismissed.

The sole witnesses to testify at the suppression hearing were two police officers summoned by the People. Officer Donahue had been a police officer for some nine years. After having received special training, he was assigned to the narcotics squad in June, 1980. In that capacity he undertook the task of apprehending drug violators. In the course of his duty, he and his partner, Officer Doyle, were seated in an unmarked vehicle in a notoriously drug-prone area on the evening of January 31, 1981. At approximately 8:15 P.M., the officers, with the aid of binoculars, observed a car with three occupants pull up to the curb approximately 100 feet away from their vantage point. Two of the occupants of the vehicle were respondent (the driver) and his wife. Shortly thereafter, three men approached the vehicle and engaged in a brief conversation with the occupants. An unidentified object was passed from respondent's hand to one of the three men, who then took the object, held it up to his nose with two hands and appeared to be smelling it.[2] In exchange for the substance, the unknown man passed what appeared to be currency to respondent in the car. A short period after, another car pulled up in front of respondent's vehicle, whereupon a male exited, approached respondent, who was still seated in his car, and engaged in an identical transaction. At that point, Officer Donahue summoned the backup unit and informed them that he was going to make an arrest.

After calling the backup unit, the officers drove their unmarked vehicle directly behind respondent's car. Officer Donahue exited, identified himself as a police officer and ordered respondent and his companions out of their vehicle. After searching respondent and finding an envelope of marihuana on his person, Officer Donahue handcuffed him and put him and his male companion in the rear seat of the police car. Officer Doyle had them exit the police car and conducted a more thorough search. Doyle removed a clear plastic bag of angel dust from respondent's coat pocket. One of the uniformed officers who had arrived upon the scene then discovered four tinfoils of angel dust on the back seat of the police vehicle.

---

**2.** Although the officers positively observed hand-to-hand contact, they were unable to clearly see, from their observation point, the object which was passed.

At the station house, $237 was recovered from respondent and his wife. This amount, along with the drugs seized, was vouchered and all defendants were apprised of their rights. After being apprised of his rights, respondent unequivocally expressed his willingness to answer questions without an attorney present. Respondent was then taken to central booking where he confessed that he had been selling angel dust, that he had sold "ten dimes of dust" that evening and that the balance of the $237 taken from him and his wife at the police station constituted his rent money. Respondent further stated that it was his male companion who had dropped the four dime bags of angel dust in the back seat of the police car.

Officer Donahue's positive in-court identification of respondent was based upon his observation of him on the street that evening for approximately 7 to 12 minutes from a distance of 100 feet. The scene of the crime was adequately illuminated by street lamps, as well as the lights of a nearby building.

Officer Doyle testified that he had observed an exchange between respondent, who was seated at the driver's side of his automobile, and an unidentified male who approached the vehicle. The latter sniffed the object, withdrew some money from his wallet and handed it to respondent.

After the hearing, the court concluded that there was no probable cause to arrest respondent inasmuch as the behavior observed by the officers was too equivocal to warrant an arrest. Accordingly, the motion to suppress the physical evidence recovered by the police, as well as the statements made by respondent, was granted in its entirety. We disagree and reverse the order under review insofar as appealed from, deny the suppression motion as to respondent, and remit the matter to the Supreme Court, Queens County, for further proceedings consistent herewith.

The issue involved in this case concerns the weight to be accorded the passing of an unknown substance, followed by a currency exchange after sniffing said substance, in determining whether probable cause was established for a narcotics arrest. An examination of the minimum showing

necessary to establish the existence of probable cause is thus in order.

The evidence needed to establish probable cause to justify an arrest need not be of such degree as to constitute proof beyond a reasonable doubt (*People v Miner,* 42 NY2d 937, 938). Rather, probable cause exists if the facts and circumstances known to the arresting officer would warrant a reasonable person, who possesses the same expertise as the officer, to conclude, under the circumstances, that a crime is being or was committed (*People v Oden,* 36 NY2d 382, 384; *People v Crosby,* 91 AD2d 20, 26, application for lv to app den 59 NY2d 765).

In the seminal case of *People v McRay* (51 NY2d 594, 601) the Court of Appeals held that a glassine envelope, once considered to be merely a " 'telltale sign of heroin' " (see *People v Alexander,* 37 NY2d 202, 204; *People v Corrado,* 22 NY2d 308, 313), "can now be deemed the hallmark of an illicit drug exchange" due to the "alarming pervasiveness of drugs in our society" (*People v McRay, supra,* pp 603-604) and the infrequency of legitimate street encounters which involve glassine envelopes. Whereas the glassine envelope as a "telltale sign" required additional relevant behavior or circumstances to raise the level of inference from suspicion to probable cause, as a "hallmark", the exchange of a glassine envelope would all but constitute per se probable cause (*People v McRay, supra,* p 604). The court, nevertheless, outlined certain circumstances which, when combined with the exchange of the glassine envelope, may give rise to the finding of probable cause. The exchange of money, for instance, would almost surely evince the existence of probable cause. Additionally, evidence of furtive or evasive behavior on the part of the participants would suffice to establish probable cause. If the exchange occurs "in an area rampant with narcotics activity, and is proven by competent evidence", an inference of probable cause may be drawn. "The character of the community known to the arresting officer provides the supplemental element — the additional requisite assurance that the observer has witnessed an illicit dealing rather than an innocent encounter" (*People v McRay, supra,* p 604). The Court of Appeals concluded in *McRay*

(*supra,* p 605) that "there is no sound basis for resisting as a matter of law the inference of probable cause that arises when * * * a trained and experienced officer observes the delivery of one or more glassine envelopes — the 'hallmark' of a drug transaction — in an area notorious for narcotics activity."

While the exchange and sniffing of a substance observed by the arresting officer at bar may not constitute a "hallmark" of an illicit drug transaction, it does constitute a telltale sign of an angel dust sale. Viewed in conjunction with the facts that money was exchanged, that the area was one so rampant with narcotics activity as to be the target of a special police operation, and that two identical transactions occurred whereby respondent remained seated in his car, was approached by other individuals and then engaged in an apparent exchange of objects through the car window, the conclusion that probable cause existed was virtually overwhelming.

In the course of finding that the arresting officers acted upon probable cause, the Appellate Division, First Department, in *People v Cabot* (88 AD2d 556, 557), willingly overlooked the absence of the recognized "hallmark" of a narcotics transaction in favor of "the realities of everyday life unfolding before a trained officer who has to confront, on a daily basis, similar incidents." The court therein found (p 557) that "[u]nder the facts now before us, although we do not have present that 'hallmark' (the passing of glassine envelopes), we do have an experienced officer operating in a known narcotics location openly observing what he reasonably believed to be drugs".

Likewise, at bar, we are presented with a well-qualified and experienced police officer operating in a location notorious for narcotics trafficking. As per his testimony at the suppression hearing, Officer Donahue had received special drug training while on the police force and had performed his own personal research with reference to drugs. He testified that the area in which the arrest was made was drug-prone, and that he had made approximately 60 drug-related arrests in the area where respondent and his companions were apprehended. The majority of these arrests involved angel dust. It was the officer's experience that

buyers of angel dust generally sniff it prior to making their purchases. Moreover, Officer Doyle, also of the narcotics unit, unequivocally testified that he had observed the actual passing of currency between respondent and an unidentified male who had sniffed the substance which was passed to him from the car. Based upon these observations, as well as past experience, "there [was] no sound basis for resisting as a matter of law the inference of probable cause" (*People v McRay,* 51 NY2d 594, 605, *supra*).

This court has recently found the existence of probable cause based upon the transfer of a clear plastic bag containing a white powder in exchange for money (*People v Roman,* 96 AD2d 953). As in this case, the "hallmark" of an illicit drug transaction, i.e., the glassine envelope, was absent therefrom. Unlike the instant situation, there was no evidence in *People v Roman* (*supra*) that the incident had occurred in a known narcotics area. Moreover, the arresting officer in that case was not as experienced in narcotics arrests as was Officer Donahue.

Under the totality of the circumstances, i.e., the drug-prone area, the sniffing indicative of an angel dust transaction, the exchange of money and the fact that two identical transactions had occurred within a short period of time, we find that Officer Donahue, with his training and experience in narcotics police work, was justified in his conclusion that a crime had been committed. Since the arrest was valid, the physical evidence seized as a result thereof is admissible and need not be suppressed. Furthermore, inasmuch as respondent was advised of his rights yet nevertheless chose to speak to the police without the presence of an attorney, his statements are likewise admissible in evidence.

Accordingly, the order granting suppression should be reversed insofar as appealed from, the motion denied as to respondent, and the matter remitted to the Supreme Court, Queens County, for further proceedings.

BROWN, J. (dissenting). It is my view that Criminal Term was correct in suppressing the physical evidence seized from the respondent and the statements made by him to the police. While the observations of the arresting officer

may have been sufficient to create a reasonable suspicion in his mind that a crime was being committed, it is my judgment that they did not rise to the level of probable cause sufficient to justify the respondent's arrest.

In *People v McRay* (51 NY2d 594, 601) the Court of Appeals articulated "the minimum showing necessary to establish probable cause" in cases involving arrests based on observations of suspected drug transactions. The court held that the passage of a glassine envelope, once viewed as a mere telltale sign of a heroin transaction, had become a hallmark of an illicit drug exchange which, when combined with certain additional circumstances or factors, might give rise to a finding of probable cause. Such circumstances were enumerated by the Court of Appeals (p 604) as (1) an exchange of money in return for the glassine envelope, (2) furtive or evasive behavior on the part of the participants, and (3) the exchange having taken place in an area rampant with narcotics activity. Once such a showing has been made, the minimum requirement is satisfied and it is a question for the fact-finding court to determine whether, under the circumstances of the case before it, probable cause for an arrest has been established.

Although it can be argued that the three additional circumstances or factors under *McRay* (*supra*) exist in the instant case, what is lacking here is the predicate telltale sign or hallmark with which these factors must be combined to establish probable cause. The majority would equate the hand-to-nose motion of a participant with the hallmark glassine envelope for the purpose of establishing the required predicate. There is in my mind no justification for this conclusion. The Court of Appeals in *McRay* (*supra*, p 602) deemed the glassine envelope to be a hallmark only after concluding that "time and experience have proven" no longer viable the formerly held belief that the exchange of a glassine envelope is as likely to signal innocent behavior as criminal conduct. It determined that the pervasiveness of drugs in our society has increased the awareness and probability that the passing of a glassine envelope signals an illicit drug transaction, given the infrequency of legitimate street encounters involving glassine envelopes. There is, however, no similar justification for concluding

that sniffing also is a hallmark of illicit drug transactions. The hand-to-nose motion observed by the arresting officer in this case is a pattern of conduct which occurs as much, if not more, during innocent encounters as it does in criminal transactions and is too equivocal an act upon which to base a warrantless arrest (see *People v McRay,* 51 NY2d 594, 602, *supra*). This is particularly so at bar where the arresting officer concededly did not see any object pass. He testified that he simply assumed from the hand motions of the participants that an object was passed in exchange for what "appeared to be currency" (cf. *People v Roman,* 96 AD2d 953).

Under the circumstances, I vote to affirm.

GIBBONS, J. P., and O'CONNOR, J., concur with WEINSTEIN, J.; BROWN, J., dissents and votes to affirm the order insofar as appealed from, with an opinion.

Order of the Supreme Court, Queens County, dated October 9, 1981, reversed insofar as appealed from, on the law and the facts, motion denied as to defendant Robert Bittner, and case remitted to the Supreme Court, Queens County, for further proceedings.