■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JOSEPH THOMAS, Respondent.—Appeal by the People from an order of the Supreme Court, Queens County (Appelman, J.),

dated April 17, 1986, which granted those branches of the defendant's omnibus motion which were to suppress physical evidence and oral statements.

Ordered that the order is reversed, on the law and on the facts, those branches of the defendant's motion which were to suppress physical evidence and oral statements are denied, and the matter is remitted to the Supreme Court, Queens County, for further proceedings.

In a case where a police officer knowledgeable in the appearance, smell and packaging of angel dust observes the passing of a packet-filled plastic bag in a location known for drug trafficking, smells the aroma of freshly burned angel dust in the defendant's vicinity, and observes the defendant's uncoordinated, stiff-legged gait—typical, in his experience, of an individual under the influence of angel dust—there is probable cause to believe that the defendant has committed a narcotics-related offense.

The record discloses that at approximately 9:00 P.M. on September 26, 1985, Police Officer Paul Catanzaro, while on radio motor patrol, observed the defendant and another man standing on the corner of 204th Street and 113th Avenue, a location known for drug trafficking. As the patrol car approached, Officer Catanzaro—who testified that he had made prior arrests involving angel dust and received training concerning the recognition of its appearance and smell—observed the man standing next to the defendant pass to him a plastic bag containing numerous smaller packages, which were approximately one inch in length. According to Officer Catanzaro, the smaller packets contained in the plastic bag were of the type commonly used to package angel dust.

Upon alighting from the patrol car to investigate, the officer immediately smelled a strong odor which he identified as burning angel dust and noticed defendant place the plastic bag in his shirt pocket. As the officer approached, the defendant turned and walked away. The officer called out to the defendant, to "come over here". The defendant complied, although he walked in a uncoordinated, robot-like manner which, in the officer's experience, was common in an individual under the influence of angel dust. Officer Catanzaro then removed the plastic bag from the defendant's shirt pocket and placed him under arrest. The plastic bag contained 27 individually wrapped packets of angel dust. A gravity knife and $115 in currency were subsequently removed from the defendant's person. After his arrest and the administering of *Miranda*

warnings, the defendant agreed to answer questions without an attorney, and informed Officer Catanzaro, *inter alia,* that although he did not sell angel dust, he was a user.

The hearing court suppressed both the physical evidence and the defendant's statements. The court observed that, "[m]ost persuasive in evaluating the testimony of this officer was the scrutinization of his demeanor during the hearing". The court further observed that, "from all of the circumstances that it was the intent of this officer the moment that he exited his vehicle, to walk up to defendant and remove the bag from his clothing". We disagree.

It is well settled that, "[t]he evidence needed to establish probable cause to justify an arrest need not be of such degree as to constitute proof beyond a reasonable doubt" *(see, People v Bittner,* 97 AD2d 33, 36). As this court has observed, "probable cause exists if the facts and circumstances known to the arresting officer would warrant a reasonable person, who possesses the same expertise as the officer, to conclude, under the circumstances, that a crime is being or was committed" *(see, People v Bittner, supra,* at 36).

In *People v McRay* (51 NY2d 594, 598), the Court of Appeals observed, in assessing the weight to be accorded the passing of glassine envelopes that, "[i]n the present day culture, such evidence presents such a strong clue of criminality that little more by way of relevant facts or circumstances is required in supplementation to justify the arrest". The court further observed that in the matters before it "proof by a qualified observer that the exchange of the envelopes occurred in an area known for its high incidence of narcotic activity provided the requisite additive so that a finding of probable cause was permissible" *(People v McRay, supra,* at 598).

The facts adduced at the hearing established that Officer Catanzaro possessed probable cause to effect the defendant's arrest. At bar, a police officer with experience in making arrests for crimes involving angel dust and trained in recognizing its appearance and smell, and manner of packaging, observed—in a location known for drug trafficking—the passing of a packet-filled clear, plastic bag, immediately smelled freshly burned angel dust upon exiting his vehicle and noticed the defendant walking in a stiff-legged, robot-like manner, characteristic of individuals under the influence of angel dust.

Nor do we feel constrained to indulge in the presumption that the confiscated plastic bag cannot be viewed as an accoutrement of criminal narcotics activity merely because it was

not characterized as a "glassine envelope" at the suppression hearing. The passing of a packet-filled plastic bag in a location known for drug trafficking under the facts herein represents no less a hallmark of narcotics trafficking than would the passing of a glassine envelope under the same circumstances. Moreover, to ascribe an innocent or equivocal interpretation to the defendant's receipt of the plastic bag under the circumstances presented is to engage in precisely the type of unrealistic analysis implicitly rejected by the Court of Appeals in *McRay (supra)*—where, acknowledging the realities of the drug trade—the court declined to characterize as innocent the passing of glassine envelopes in locations known for drug trafficking. Moreover, even if the passing of a receptacle-filled bag in such a location could be characterized as "equivocal", any question with respect to the probable commission of criminal narcotics activity was dispelled when the officer—emerging from his patrol car—smelled the aroma of freshly burned angel dust and observed the defendant's stiff-legged, robot-like gait.

Finally, the hearing court's gratuitous assertion that, in its view, the arresting officer intended to search the defendant from the "moment that he exited his vehicle" is not only unsupported by the officer's own testimony, but belied by the concrete and articulable indicia of criminality which unfolded prior to the officer's confrontation with the defendant. It is notable in this respect that while the hearing court alluded to the officer's demeanor as most "persuasive" in its evaluation of his testimony, its decision fails to identify a single instance in which the officer's testimony was evasive, equivocal or inconsistent in its recitation of the facts surrounding the defendant's arrest. Nor did the court elaborate upon the means by which it was apparently able to probe the mental processes of the arresting officer—the only witness who appeared at the hearing—so as to permit it to assert conclusively that he intended to search the defendant from "the moment that he exited his vehicle".

Under the totality of the circumstances—and tempered by a realistic perception of the "present day culture" *(People v McRay, supra,* at 598)—we conclude that there existed sufficient information to lead a reasonable person possessing the same expertise as Officer Catanzaro to conclude that a crime was being committed. Brown, J. P., Kunzeman, Kooper and Balletta, JJ., concur.