■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v RAMON VALENTIN, Respondent.—Order of the Supreme Court, Bronx County (Joseph Mazur, J.), entered May 15, 1989, which granted defendant's motion to suppress physical evidence, unanimously reversed, on the law, the motion denied, and the matter remanded to Supreme Court for further proceedings.

On September 29, 1988 at approximately 12:05 A.M., the livery cab in which defendant was the sole passenger was approached by three uniformed officers assigned to the Bronx Anti-Narcotics Division of the 46th Precinct. The cab was stopped for a traffic light at the intersection of 182nd Street and Creston Avenue and was observed by the officers for a period of "30 seconds" to "a minute or so" before they approached. It is conceded that the cab was not in apparent violation of any motor vehicle or traffic regulation and that the driver had not indicated any distress or need for assistance. The officers testified that they were making a "livery check" pursuant to a departmental directive to "every once in a while, stop a livery and just make sure everything is okay, they're not being held up or anything like that." The officers were given no instructions concerning how to effect a "livery check". One officer explained, "You do a livery cab check just like you do any other car stop."

Upon approaching the vehicle, one of the officers testified that defendant kept glancing nervously over his right shoulder at her partner as he approached the passenger side of the vehicle. As she came up to the driver's side, she saw defendant reach into his jacket, remove a clear plastic bag containing a white powder and throw it to the floor. She directed her

partner to remove defendant from the cab and, as he opened the door and the ceiling light went on, the bag, containing what later proved to be cocaine, was clearly visible on the floor of the cab. Significantly, both officers testified that at no time did either of them direct the driver of the cab to stop. A third officer, who was engaged in conversation with the driver while defendant was being removed from the cab, did not testify at the hearing despite the People's offer of his testimony on a future date.

Supreme Court, relying upon *People v Ingle* (36 NY2d 413), held that the lack of a uniform procedure for the random selection of livery cabs to be stopped rendered the police action arbitrary and discriminatory and, therefore, suppressed the physical evidence taken from the vehicle. Supreme Court failed to state the findings of fact upon which its analysis was based, merely reciting the testimony given by the two police officers without making any assessment of the credibility of that testimony. However, from our reading of the record, we find that the circumstances leading to the seizure of the cocaine do not give rise to an analysis under *Ingle (supra)*.

The livery cab was stationary at a stoplight as the three police officers approached to ascertain that the driver was in no danger. Before any inquiry could be made, defendant was seen to remove a clear plastic bag containing a white powder from inside his jacket and throw it to the floor of the cab. His seizure was justified. "Where a police officer entertains a reasonable suspicion that a particular person has committed, is committing or is about to commit a felony or misdemeanor, the CPL authorizes a forcible stop and detention of that person" *(People v De Bour,* 40 NY2d 210, 223, citing CPL 140.50 [1]; *Terry v Ohio,* 392 US 1; *People v Cantor,* 36 NY2d 106). The discarding of a clear plastic bag containing a white powder, upon seeing the police officers walk up to the cab, was sufficient to indicate to the officer observing it that defendant was engaged in criminal activity *(People v Bittner,* 97 AD2d 33, 38). Concur—Milonas, J. P., Rosenberger, Kassal and Rubin, JJ.