================================================================
This memorandum is uncorrected and subject to revision before
publication in the New York Reports.
----------------------------------------------------------------
No. 36
The People &c.,
            Appellant,
        v.
William Brown,
            Respondent.
----------------------
No. 37
The People &c.,
            Appellant,
        v.
Patrick Thomas,
            Respondent.


Case No. 36:
            David M. Cohn, for appellant.
            Bruce D. Austern, for respondent.

Case No. 37:
            David M. Cohn, for appellant.
            Hector Gonzalez, for respondent.



MEMORANDUM:

        The appeals should be dismissed for failure to fulfill

the requirements of CPL 450.90 (2) (a).

        The Appellate Division, with two Justices dissenting,

determined that Supreme Court should have suppressed the show-up

identification of defendant William Brown (115 AD3d 38 [1st Dept

- 1 -

2014] and the show-up identification of and property seized from defendant Patrick Thomas (115 AD3d 69 [1st Dept 2014]) because the police lacked reasonable suspicion to stop and detain them. Accordingly, the court reversed the judgment of conviction and sentence in each case, granted defendants' respective motions to suppress and remanded for a new trial preceded by an independent source hearing.  One of the dissenting Justices granted both defendants leave to appeal to us.

Whether the circumstances of a particular case rise to the level of reasonable suspicion presents a mixed question of law and fact (see e.g. People v Howard, 74 NY2d 943 [1989] [dismissing an appeal from an Appellate Division order of reversal involving the mixed question of whether the police harbored a reasonable suspicion that the defendant was about to commit a crime]).  Because the Appellate Division's reversals were thus not "on the law alone or upon the law and such facts which, but for the determination of law, would not have led to reversal" (CPL 450.90 [2] [a]), these appeals are not authorized to be taken.

While acknowledging that "determinations as to reasonable suspicion typically present a mixed question of law and fact," the dissent cites People v McRay (51 NY2d 594 [1980]) for the proposition that these cases instead involve a straight-up question of law -- namely, "the minimum showing necessary to establish reasonable suspicion" (dissenting op at 1 [internal

quotation marks omitted]).  In <u>McRay</u>, though, the Appellate Division reversed the suppression court on the ground that the People's proof was insufficient as a matter of law to support probable cause to arrest (<u>id.</u> at 605).  When we disagreed and reversed, we therefore remitted to the Appellate Division for factual review, emphasizing that an inference of probable cause was permitted, but not required, on the facts established (<u>id.</u> at 605, 606).  Here, by contrast, the Appellate Division reversed the suppression court because, when exercising its independent fact-finding powers, it drew a different inference from the established facts, thus deciding a mixed question of law and fact.  The dissenting Judge strongly disagrees with the Appellate Division.  But the views of individual Judges of this Court on the merits of defendants' suppression motions are beside the point because the Criminal Procedure Law simply does not vest us with jurisdiction to entertain these appeals.

People v Brown & People v Thomas

No. 36 & 37


PIGOTT, J. (dissenting):

Although determinations as to reasonable suspicion typically present a mixed question of law and fact, where the issue presented involves the "minimum showing necessary to establish" reasonable suspicion, "a question of law is presented for our review" (People v McRay, 51 NY2d 594, 601 [1980]).  Here, the Appellate Division erred as a matter of law in holding that the undisputed facts and the reasonable inferences drawn therefrom failed to satisfy the minimum showing necessary to establish reasonable suspicion.  Therefore, I dissent and would reverse the order of the Appellate Division and remit the cases to that court for a review of the facts in accordance with this Court's decision in People v McRay.

In the early morning hours of December 9, 2010, Sergeant Kenneth Monahan and Officers Edward Carey and Thomas Donovan, members of the "cabaret unit," a unit whose primary duty is the "midnight enforcement of bars and nightclubs," including "drug sales, fraudulent accosting and loitering for prostitution," were on uniformed patrol in the Times Square area.

At around 1:30 a.m., Officer Carey encountered defendant Brown -- whom he had previously arrested twice for

- 1 -

fraudulent accosting -- outside of a club near Times Square and directed him to leave the area.

Three hours later, at around 4:30 a.m., while sitting in an unmarked police van, the officers spotted defendants Brown and Thomas running down the middle of Broadway in Times Square, looking back over their shoulders as they ran. Officer Carey apprised his colleagues of Brown's identity. Sergeant Monahan recognized Thomas as someone who associated with people, other than Brown, who preyed on victims in the Times Square area. The officers exited the van, called to defendants and both men stopped. Brown, who was out of breath, sat on the ground. Neither Brown nor Thomas was placed in handcuffs. Sergeant Monahan contemporaneously located a robbery victim outside of the club where Officer Carey had seen Brown three hours earlier. After the victim identified both Brown and Thomas as the perpetrators, they were placed under arrest. The victim's Rolex and $185 in cash was recovered from Thomas.

Defendants thereafter moved to suppress the showup identification. After a suppression hearing where the court heard testimony from two of the police officers and the victim, Supreme Court denied the motion. A divided Appellate Division reversed, ordered suppression of the victim's out-of-court identification, and remanded for a new trial, holding that "[t]he fact that the officers observed defendant[s] . . . running does not elevate the level of suspicion" (115 AD3d 38, 40 [1st Dept

2014]).

"Where a police officer entertains a reasonable suspicion that a particular person has committed, is committing or is about to commit a felony or misdemeanor, the CPL authorizes a forcible stop and detention of that person" (People v De Bour, 40 NY2d 210, 223 [1976], citing CPL 140.50 [1]). Reasonable suspicion is defined as "the quantum of knowledge to induce an ordinarily prudent and cautious man under the circumstances to believe criminal activity is at hand" (People v Cantor, 36 NY2d 106, 112-113 [1957]). A stop based on reasonable suspicion will be upheld if the officer can identify "specific and articulable facts" that, together "with any logical deductions, reasonably prompted th[e] intrusion" (id. at 113).

Here, the officers observed defendants running down a major thoroughfare in the early morning hours, looking back over their shoulders. They recognized the two men because they were known to have engaged in, or had been associated with people engaged in, crimes in that area. The officers also knew that Brown had a history of fraudulent accosting in the Times Square area. In fact, only three hours earlier Officer Carey had observed Brown in front of the club and directed him to leave. The officers also knew that Thomas fraternized with people, other than Brown, involved in similar scams. Clearly, under these circumstances, the police officers possessed reasonable suspicion to stop Brown and Thomas. They would have been derelict in their

duty had they not done so.

The present case is factually akin to the circumstances in People v Evans (65 NY2d 629 [1985]), where this Court determined that the initial stop of the defendant was based on reasonable suspicion where the arresting officers observed the defendant running from a subway station, carrying a white shopping bag and looking over his shoulder several times, and then trying to gain entrance to one apartment building after another. In concluding that the stop was reasonable, this Court held: "Although each factor, standing alone, could be susceptible to an innocent interpretation, a view of the entire circumstances indicates that the officers entertained a reasonable suspicion that the defendant had committed a crime . . . and was attempting to flee" (id. at 630).

Likewise, in this case, the combination of the officers' particular knowledge of each defendants' criminal history coupled with defendants' flight from an area where defendants were known to fraternize, while looking over their shoulders, was sufficient to provide the officers with reasonable suspicion (see People v Sierra, 83 NY2d 928, 929 [1994] ["flight . . . combined with other specific circumstances indicating that the suspect may be engaged in criminal activity, may give rise to reasonable suspicion"]).

Morever, the motion court's finding of reasonable suspicion under these circumstances is not inconsistent with our

holding in People v Johnson (64 NY2d 617 [1984]). There we held that an officer's knowledge that a suspect had previously burglarized houses in a neighborhood in which the suspect was walking did not by itself amount to reasonable suspicion (see id. at 619), but indicated that we might have reached a different conclusion had the suspect been fleeing the scene (see id. [noting that "there [was] no other testimony suggesting that his behavior was furtive or his movements unusual"]).

The officers plainly had reason to believe that defendants had engaged in criminal activity. As we cautioned in People v Chestnut (51 NY2d 14 [1980]),

> "[c]ourts simply must not, in this difficult
> area of street encounters between private
> citizens and law enforcement officers,
> attempt to dissect each individual act by the
> policemen; rather, the events must be viewed
> and considered as a whole, remembering that
> reasonableness is the key principle when
> undertaking the task of balancing the
> competing interests presented"

(id. at 23). Indeed, "[b]y disapproving of the stop of defendant[s], . . . [the majority] is discouraging police work that is not only constitutionally proper but also laudable. Such a precedent will serve to impede effective law enforcement and interfere with the protection and safety of the public" (People v Brown, 115 AD3d 38, 41 [Tom, J.P. and Saxe, J., dissenting]). I would reverse the order of the Appellate Division and remit the cases to that court for a review of the facts in accordance with this Court's decision in People v McRay.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

<u>For Each Case</u>:  Appeal dismissed upon the ground that the reversal by the Appellate Division was not "on the law alone or upon the law and such facts which, but for the determination of law, would not have led to reversal" (CPL 450.90[2][a]), in a memorandum.  Chief Judge Lippman and Judges Read, Rivera, Abdus-Salaam, Stein and Fahey concur.  Judge Pigott dissents in an opinion.


Decided March 26, 2015