OPINION OF THE COURT
Chief Judge Cooke.
These three appeals involve variations of the common glassine envelope scenario.
They are the latest in the persistent line of those cases assaying the weight to be accorded the passing of glassine envelopes in determining whether probable cause was established for a narcotics arrest. In the present day culture, such evidence presents such a strong clue of criminality that little more by way of relevant facts or circumstances is required in supplementation to justify the arrest. In each of these three matters, proof by a qualified observer that the exchange of the envelopes occurred in an area known for its high incidence of narcotic activity provided the requisite additive so that a finding of probable cause was permissible.
I
In People v McRay, defendant was arrested by a Street Enforcement Unit of the New York City Police Department. The police team was headed by Sergeant Alvin Ingram, a 20-year veteran of the department who, prior to his street enforcement duties, had served as a narcotics officer for four and one-half years. In addition to actual involvement in 300 to 400 drug arrests, Ingram completed Federal and local courses in illicit drug dealings and has testified before a congressional committee investigating drug abuse.
On August 10, 1977, the sergeant and his unit set up an undercover buy operation on West 127th Street in Manhattan. The area, according to Ingram’s testimony, is a “high narcotic prone location” when measured by the number of *599 narcotic arrests made, the number of citizen complaints received and his own observations of narcotics activity. While standing in front of a grocery store observing the undercover “buy” officer, Ingram saw the defendant approach and stop a few feet away. Soon defendant was joined by another male, and the two engaged in a short conversation. Defendant then entered the grocery, his companion remaining outside and looking up and down the street. Ingram followed McKay into the store and overheard him asking for a “number 3 bag”, which the store did not have. Settling for a “number 5 bag”, defendant left the store and rejoined his companion. Sergeant Ingram purchased a beer and returned to the street drinking it. Again positioning himself near the two men, Ingram heard the other male tell defendant “come on, come on around the corner.” The men started walking, with the officer following at a safe distance. Suddenly, the men stopped, McKay opened the grocery bag and his companion withdrew bundles of glassine envelopes from his pockets and placed them in the bag. The bundles, which appeared to contain “ten dollar bags” of heroin, were too large for the man’s hand to encircle. Defendant was arrested a short time later. Six separate bundles, containing 133 glassine envelopes of heroin, were found in the bag. After denial of his motion to suppress, defendant entered a guilty plea. The Appellate Division, finding a lack of probable cause for arrest, entered an order of reversal on the law. That order is now reversed.
II
In People v Charles J., defendant was arrested by veteran Police Officer Lyman Gerrish and his partner, Officer Evans. On February 26, 1977, Gerrish was positioned on the second floor of an abandoned building in the vicinity of West 128th Street and Eighth Avenue in Manhattan. This intersection was so well known for drug trafficking that it became a target of a special police campaign called “Operation Drug.” Of the approximately 100 drug arrests made by Officer Gerrish, 30 or 40 had occurred at this same location. Gerrish too had completed a law enforcement course in drug transactions.
*600 From their vantage point in the abandoned building and utilizing binoculars, the policemen noticed defendant standing on the celebrated corner. A constantly changing crowd of people milled about, but defendant remained at the same location for approximately 45 minutes. During that time, seven or eight persons approached defendant, spoke with him and departed. Finally, upon the advance of an unidentified male, Officer Gerrish saw defendant reach beneath his coat into his sweater pocket, withdraw a white glassine envelope and pass the envelope to the other individual. Defendant was arrested, and found to be in possession of 19 packets of heroin. Following denial of his motion to suppress, defendant was adjudicated a youthful offender. A divided Appellate Division affirmed. That order is now affirmed.
Ill
In People v Hester, defendant was arrested by an officer also assigned to “Operation Drug”, Ronald Bellistri. An experienced narcotics officer, Bellistri had made more than 100 drug-related arrests and had received formal law enforcement training in the narcotics field. On April 6, 1977, Bellistri and his partner stationed themselves in a vacant apartment overlooking West 115th Street near Seventh Avenue. Officer Bellistri had made numerous drug arrests on that block. Within a few minutes, the officers observed defendant and one Artis Jones walking together on the south side of 115th Street. The two men stopped in front of a school yard, looking up and down the street. Jones then passed a stack of whitish glassine envelopes to defendant, who placed them in his pocket while continuing his watch back and forth along the block. Two more similar exchanges were made. Defendant was then arrested with 31 glassine envelopes in his possession. Artis Jones was also arrested in possession of a quantity of cocaine and $415. Defendant’s motion to suppress was denied and he entered a guilty plea to criminal possession of a controlled substance in the third degree. The Appellate Division, concluding that there was no probable cause for an arrest, reversed on the law. That order is now in turn reversed.
*601 IV
At the outset, it is important to emphasize that probable cause determinations, which involve questions of fact or mixed questions of law and fact, generally are beyond the review powers of this court (People v Wharton, 46 NY2d 924, 925; People v Clements, 37 NY2d 675, 677-678; People v Oden, 36 NY2d 382, 384-385). Thus, where the facts are disputed, where credibility is at issue or where reasonable minds may differ as to the inference to be drawn from the established facts, this court, absent an error of law, will not disturb the findings of the Appellate Division and the suppression court (e.g., People v Wharton, supra; People v Oden, supra). On the other hand, when an issue arises as to the standard by which probable cause is measured — the minimum showing necessary to establish probable cause— a question of law is presented for review (see, e.g., People v Clements, supra, at pp 677-678). In these three cases, it is the minimum requirement for probable cause that is at issue. Two were reversed by the Appellate Division, on the law, essentially on the ground that the undisputed facts do not meet the threshold requirement for probable cause. In the third, the defendant seeks reversal of his conviction on the same basis. Thus, there is presented the issue of what constitutes the lowest level of proof required for probable cause in the glassine envelope situation.
We are not without guideposts, however, since prior decisions have established principles relevant to these appeals. This court has consistently recognized that a glassine envelope is a “telltale sign of heroin” (People v Alexander, 37 NY2d 202, 203; People v Corrado, 22 NY2d 308, 313). The cases also indicate that a high incidence of narcotic trafficking in a particular community is a relevant circumstance in assessing probable cause (e.g., People v Oden, 36 NY2d 382, 385, supra; People v Brown, 32 NY2d 172, 174). And, the police officer’s experience and training in narcotics investigations are entitled to weight in evaluating his or her observations (e.g., People v Alexander, supra, at pp 203-204; see People v Valentine, 17 NY2d 128, 132). But, despite the fact that the glassine envelope is a “telltale sign of heroin”, we have never held that the mere passing *602 of such an envelope establishes probable cause (see, e.g., People v Oden, supra, at p 385; People v Corrado, 22 NY2d 308, 313, supra). Rather, “additional relevant behavior or circumstances” are necessary “to raise the level of inference from suspicion to probable cause” (People v Oden, supra, at p 385).
It is not logic alone which has dissuaded the courts from concluding that an exchange of a glassine envelope, the “telltale sign” of heroin, does not suffice to establish probable cause. Probable cause requires, not proof beyond a reasonable doubt or evidence sufficient to warrant a conviction (e.g., People v Miner, 42 NY2d 937, 938; People v White, 16 NY2d 270, 273), but merely information which would lead a reasonable person who possesses the same expertise as the officer to conclude, under the circumstances, that a crime is being or was committed (see, e.g., People v Oden, 36 NY2d, at pp 384-385, supra; People v Russell, 34 NY2d 261, 262-264; see, also, Henry v United States, 361 US 98, 102). Arguably, the street exchange of a glassine envelope alone would provide the requisite level of certainty (see, e.g., United States v Rosario, 638 F2d 460; 1 LaFave, Search and Seizure, A Treatise on the Fourth Amendment, § 3.6, at pp 654-655)[1]
 Undoubtedly, the courts have been influenced by the maxim that a pattern of conduct which occurs “just as frequently * * * in innocent transactions” as in criminal transactions “is too equivocal to form the basis for * * * a warrantless arrest” (People v Russell, 34 NY2d 261, 264, supra). And obviously it was thought, at the time, that the exchange of a glassine envelope is as likely to signal innocent behavior as criminal conduct. Whatever the validity of this conclusion in the past, time and experience have proven it no longer viable.
We have witnessed, in recent years, a virtual explosion in *603 drug trafficking in our society (see, e.g., Annual Message of the Governor, McKinney’s Session Laws of NY, 1973, pp 2317-2318; “Crime in America — Heroin Importation, Distribution, Packaging and Paraphernalia”, Hearings Before the House Select Comm on Crime, 91 Cong, 2d Sess, p 1 [1970]).[2] One authority estimated, for instance, that the number of heroin users or addicts in New York City alone rose from 65,000 in 1967 to 150,000 in 1971 (Second Report of the National Comm on Marihuana and Drug Abuse, Drug Use in America; Problem in Perspective, p 173).[3] More recently, in just the last few months, both the President and the Governor of this State have sought to declare war on the heroin epidemic. Although the stringent drug laws in this State have had an impact, the problem persists (see Governor’s Message on approving L 1979, ch 410, McKinney’s Session Laws of NY, 1979, p 1799).[4] The costs to this society of illicit drugs, in human and economic terms, is staggering (see, e.g., Second Report of the National Comm on Marihuana and Drug Abuse, pp 173-176). And, it is generally agreed that drug dependency and trafficking breed collateral, sometimes violent, crime (see People v Broadie, 37 NY2d 100, 113; Amer Bar Assn Special Comm on Crime Prevention and Control, New Perspective on Urban Crime 31 [1972]).
The alarming pervasiveness of drugs in our society does not, of course, provide the occasion for obliterating the protections afforded by the Fourth Amendment and our State Constitution. But it does increase the awareness, and the probability, that the passing of a glassine envelope signals an illicit drug transaction and not some other, innocu *604 ous act. Indeed, given the infrequency of legitimate street encounters which involve glassine envelopes, the exchange itself would all but constitute per se probable cause. If in the past the glassine envelope was a “telltale sign of heroin”, it can now be deemed the hallmark of an illicit drug exchange.
It is against this background that this court should outline certain circumstances which, when combined with the exchange of a glassine envelope, may give rise to a finding of probable cause. To begin with the most obvious, if money is passed in exchange for the envelope, probable cause almost surely would exist (see, e.g., United States v Davis, 561 F2d 1014, 1017; United States v Thomas, 551 F2d 347, 348). Exchange of currency negates all but the most implausible explanations for the transaction, and thus conveys more than sufficient indicia of a drug sale to warrant an arrest. Similarly, additional evidence of furtive or evasive behavior on the part of the participants suffices to establish probable cause (e.g., People v Alexander, 37 NY2d 202, 204, supra; People v Butterly, 25 NY2d 159, 162-163; see Sibron v New York, 392 US 40, 66-67). Such evidence, suggesting consciousness of guilt, has traditionally been considered some proof of a crime (see, e.g., People v Yazum, 13 NY2d 302, 304-305; People v Leyra, 1 NY2d 199, 208-210).
Beyond these situations, if the exchange occurs in an area rampant with narcotics activity, and is proven by competent evidence such as testimony of a qualified observer, an inference of probable cause may properly be drawn. The character of the community known to the arresting officer provides the supplemental element — the additional requisite assurance that the observer has witnessed an illicit dealing rather than an innocent encounter. In an area which has developed a reputation as a drug marketplace or the like, the possibility that a street exchange of a glassine envelope involves noncriminal behavior declines appreciably. Indeed, it is precisely in such a neighborhood that the exchange would be expected to most reliably establish a drug transaction.[5]
*605 Quite simply, then, there is no sound basis for resisting as a matter of law the inference of probable cause that arises when as in these cases a trained and experienced officer observes the delivery of one or more glassine envelopes —the “hallmark” of a drug transaction — in an area notorious for narcotics activity.[6] This is not to say that the inference of probable cause must be drawn in every case. Rather, we are merely establishing a minimum requirement. Once the minimum is satisfied, it is a question for those courts with fact-finding power — principally the suppression court and the Appellate Divisions — to find as a fact whether probable cause exists. As discussed, those factual determinations are normally beyond the review of this court.
V
Applying these principles to the three appeals here, it is concluded in each case that enough was shown to create a fact question as to probable cause. In People v McRay, a veteran narcotics officer witnessed the defendant actually receiving a number of bundles of glassine envelopes in a high narcotics area. In addition to the officer’s expertise, and the high incidence of narcotics in the area, it is significant that defendant made careful preparations to receive the packets, his companion looked furtively up and down the street, and a large number of glassine envelopes were ex *606 changed. In these circumstances, the finder of fact could properly draw an inference of probable cause, and the Appellate Division erred in reversing on the law.
In People v Charles J., an experienced officer saw seven or eight people approach defendant, and ultimately saw defendant pass a whitish glassine envelope. The locale was so rampant with drugs as to be one of the targets of a special police operation. Thus, not only did an experienced officer witness the passing of a glassine envelope in a high narcotics area, but he observed the defendant engage in other behavior consistent with that of a narcotics seller. The officer was also able to identify the envelope as containing a whitish substance. In such a situation, the factual conclusion of the suppression court, that probable cause existed, affirmed by the Appellate Division, satisfies the minimum requirement for probable cause and may not be overturned by this court.
Finally, in People v Hester, an experienced officer saw defendant receive three stacks of whitish glassine envelopes. In addition, defendant was looking up and down the street during the transaction. As in People v McRay, the sum of these circumstances makes out a fact question as to the existence of probable cause and the Appellate Division erred in reversing on the law.
Accordingly, in People v McRay and People v Hester the orders of the Appellate Division should be reversed, and the cases remitted to that court for a review of the facts. In People v Charles J. the order of the Appellate Division should be affirmed.

. In these cases, the officers making the arrest made first-hand observations and did not rely upon information supplied by other persons. Thus, there is no occasion to apply the standards by which informer-produced information is.measured (see, generally, Moylan, Hearsay and Probable Cause: An Aguilar and Spinelli Primer, 25 Mercer L Rev 741). The only question here is whether the officers’ observations establish probable cause.

. For a number of reasons, it is difficult, if not impossible, to estimate accurately the number of current addicts or users or the increase in the prevalence of narcotics in this country over the years (see Handel, Problems with Official Drug Statistics, 21 Stanford L Rev 991).

. Experts estimate that between one half and three fifths of the Nation’s opiate dependent persons reside in New York City (see, e.g., President’s Comm on Law Enforcement and the Administration of Justice, Task Force on Narcotics and Drug Abuse [1967], p 11; Second Report of the National Comm on Marihuana and Drug Abuse, p 173).

. For a discussion of the history of drug abuse control in this State, and various alternative approaches, see Hardt and Brooks, Social Policy on Dangerous Drugs: A Study of Changing Attitudes in New York and Overseas (48 St John’s L Rev 48).

. It would not be an exaggeration to say that drug trafficking reaches all parts of this State, from the crowded cities to the rural woodlands; no neigh *605 borhood, community or group enjoys an immunity from the affliction. But, it is also true that certain neighborhoods exhibit a more concentrated level of drug activity. Contrary to the suggestion of the concurring opinion, our cases have always recognized this reality.
Indeed, the character of a neighborhood as a known locale for illicit narcotic activity provides an additional objective empirical basis for an officer to evaluate whether probable cause exists to believe that a transaction involves illegality. Each defendant has a constitutional right to be free from unreasonable searches and seizures. The reasonableness of the police officer’s conduct in any situation will depend on the totality of the circumstances with which he is confronted, including the known character of the area involved.

. Any suggestion that a bright line probable cause rule would enhance the possibility of police perjury may be quickly rejected. As this court observed in People v Berrios (28 NY2d 361, 368): “Some police officers, as well as some in other callings may be tempted to tamper with the truth. But there is no valid proof that all members of law enforcement agencies * * * who testify are perjurers. Therefore, all policemen should not be singled out as suspect as a matter of law.” Thus, we must reject any such “attack on the integrity of our entire law enforcement system” (id.).