[617 NYS2d 316]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JOHN
MIMS, Respondent.

First Department, October 25, 1994

**APPEARANCES OF COUNSEL**

*Nancy Strohmeyer* of counsel *(Mitchell G. Krapes* and *Paul Harnisch* with her on the brief; *Robert M. Morgenthau, District Attorney* of New York County), for appellant.

**OPINION OF THE COURT**

Tom, J.

On September 27, 1991, at approximately 10:30 P.M., Police Officers Brian Fleming and Edward Lott were in uniform on a rooftop observation post overlooking the front of 303 West 154th Street, a six-story residential building (the Building). As Officer Lott guarded the roof area to ensure that no one approached the officers from behind, Officer Fleming, with binoculars, observed defendant as he stood in front of the Building. He observed two individuals approach defendant and after a short conversation, one of the individuals handed

defendant money in exchange for green-capped vials of what Officer Fleming believed to be crack.

Officer Fleming testified that less than one minute later, two different individuals approached defendant and spoke to him for a short period of time. Defendant thereafter walked across the street to the front of an abandoned building, reached into a three-foot-by-four-foot cardboard box sitting on top of a pile of garbage and removed a brown paper bag. Officer Fleming then observed defendant remove "something" from the bag, place the bag back into the box and return the box to the garbage pile. Defendant subsequently walked back across the street to where the individuals were standing and handed them green vials in exchange for currency.

After the second transaction, the officers left the observation post and proceeded to the front of the Building. At this juncture, Officer Lott detained defendant while Officer Fleming crossed the street and recovered the brown bag. Upon inspecting the bag, Officer Fleming discovered that it contained 18 green-capped vials which the officer believed, in his experience, contained crack cocaine. Upon handcuffing and searching defendant, Officer Fleming recovered $130, including 45 one dollar bills. In addition, Officer Lott recovered another green-capped vial from the ground near where defendant was standing.

At the *Mapp/Dunaway* hearing, only Officer Fleming testified on behalf of the People. Officer Lott did not appear.

■ ■ In an oral decision rendered November 20, 1992, and in a subsequent, undated written decision, Justice Berman held that defendant had standing to contest the search of the bag and that although Officer Fleming had probable cause to arrest defendant based upon his observations, Officer Lott did not possess the requisite probable cause as no evidence was adduced that Officer Fleming conveyed his observations to Officer Lott or directed him to make the arrest. The People subsequently moved for reargument and the court adhered to its original decision. We now affirm.

The question of whether an individual has abandoned personal property and thereby relinquished the expectation of privacy in that property turns on intent *(People v Howard,* 50 NY2d 583, 593, *cert denied* 449 US 1023; *People v Boodle,* 47 NY2d 398, *cert denied* 444 US 969; *People v Phelps,* 192 AD2d 483, *lv dismissed* 82 NY2d 758; *People v Kelly,* 172 AD2d 458, *affd* 79 NY2d 899). There is, in addition, a presumption

against the waiver of constitutional rights and it is the People's burden to overcome that presumption with evidence of " ' "an intentional relinquishment of abandonment" ' " *(People v Howard, supra,* at 593, quoting *Brookhart v Janis,* 384 US 1, 4).

Although we have held that such actions, such as haphazardly dropping an item, or tossing it aside, and quickly walking away, constitute an abandonment *(see, People v Phelps, supra,* at 483; *People v Butler,* 184 AD2d 305, *lv denied* 80 NY2d 927; *People v Marrero,* 173 AD2d 244, *lv dismissed* 78 NY2d 969), we have also held that a defendant, by placing a bag inside a recessed area in a building's lobby wall, covering the opening with a metal plate, and returning to the stoop in front of the building, did not abandon his property *(People v Kelly, supra,* at 458); that the mere placing of property on a shelf and walking a short distance away did not effect an abandonment *(People v Pacheco,* 107 AD2d 473, *appeal dismissed* 67 NY2d 631); and that the placement of a bag on a newsstand shelf and walking away did not constitute an abandonment *(People v Campbell,* 160 AD2d 363). Further, in *People v Howard (supra),* the Court of Appeals recognized that concealment of property in a trash can does not necessarily constitute an abandonment *(supra,* at 593, citing *Work v United States,* 243 F2d 660, 662).

■ In the instant action, the People have failed to meet their burden of demonstrating an intentional abandonment of the property. Rather, Officer Fleming's testimony at the suppression hearing clearly reflects actions, taken on the part of the defendant, not to abandon the property, which might consist of a casual toss of the bag onto the garbage, but an effort to conceal the property and exclude other individuals from its contents.

The dissent's position is that since the defendant did not meet his burden of showing a legitimate expectation of privacy in the seized property he, therefore, had no standing to challenge the seizure of the bag containing the vials of cocaine. We disagree.

In *People v Whitfield* (81 NY2d 904, 906), the Court of Appeals held that: " '[a] showing of a possessory or proprietary interest in the item seized by itself * * * is not the determinative factor on the issue of standing' *(People v Rodriguez,* 69 NY2d 159, 163, citing *Rawlings v Kentucky,* 448 US 98). The court must also consider such factors as whether the

defendant took precautions to maintain privacy and whether the defendant had the right to exclude other persons from access".

In the instant case, defendant, based on the testimony of Officer Fleming, clearly exercised dominion and control over the bag and took affirmative steps to maintain that control by secreting the bag in a box in front of an abandoned building. After retrieving "something" from the bag, defendant did not toss it away but rather, placed the bag back into the box. Defendant remained in close proximity to the bag where he was able to observe it and anyone who might approach it. There was no testimony that other persons were near the vacant area where the cardboard box was placed nor was the lot being used by anyone else. There was no evidence presented by the People which might indicate defendant's desire to relinquish control or otherwise abandon his property.

Further, Officer Fleming did not testify that the "something" defendant retrieved from the paper bag appeared to him to be vials of crack cocaine. It, therefore, appears that he was unable to identify what was taken out of the bag by defendant.

As we stated in *People v Delgado* (192 AD2d 318, 319), "the law requires solely that a defendant demonstrate a reasonable expectation of privacy in the area searched" (citing *People v Rodriguez,* 69 NY2d 159, *supra; Minnesota v Olson,* 495 US 91; *see also, People v Fuentes-Borda,* 186 AD2d 405 [where we held that police observations of defendant entering, exiting and locking an apartment established a privacy interest sufficient to confer standing on the defendant to challenge a police search of the apartment]).

In the case at bar, Officer Fleming's observations, having clearly seen defendant in possession of the bag and taking actions to avoid anyone from finding it, were sufficient to confer standing on the defendant with regard to the search of his bag. The fact that defendant failed to assert a possessory interest in the bag at the time of the search does not, as the dissent suggests, preclude him from challenging that search at a later time *(see, People v Millan,* 69 NY2d 514, 518-519; *People v Echols,* 157 AD2d 976, 978, *lv denied* 76 NY2d 734; *People v Gonzalez,* 115 AD2d 73, 80, *affd* 68 NY2d 950).

■ With regard to Officer Lott's immediate arrest of defendant upon arriving on the scene, we find that the officer lacked probable cause to effectuate that arrest. While we are

aware that probable cause may be communicated from one officer, who personally observed the drug sale, to the arresting officer *(see, People v Petralia,* 62 NY2d 47, 51-52, *cert denied* 469 US 852), we have also held in *People v Mitchell* (185 AD2d 163, 164, *appeal dismissed* 81 NY2d 819) that: "[The police] cannot be considered to have relied on information possessed by each other without there having been any communication of either the information itself or a direction to arrest" *(see also, People v Brnja,* 50 NY2d 366, 373, n 4).

Here the transcript of the suppression hearing is devoid of any testimony by Officer Fleming that he imparted any information concerning defendant's activities to his fellow officer or directed Officer Lott to make the arrest. Officer Lott made no observation as to what transpired on the street. Officer Fleming testified that Officer Lott's sole function on the rooftop was to guard the observation post. As a result, Officer Lott lacked the probable cause necessary to arrest defendant.

The IAS Court was within its discretion to disregard inconclusive proof and not to speculate on whether or not Officer Fleming imparted information to Officer Lott to justify defendant's arrest. The burden is upon the People to establish probable cause by clear and sufficient evidence *(see, People v Dodt,* 61 NY2d 408).

Accordingly, order, Supreme Court, New York County (Frederic S. Berman, J.), entered November 20, 1992, which granted defendant's motion to suppress certain physical evidence and dismissed the indictment, is affirmed.

SULLIVAN, J. P. (dissenting). Since defendant lacked standing to challenge the seizure of the bag containing the drugs and inasmuch as, in any event, the officers had probable cause to arrest defendant and seize all of the physical evidence, I would reverse, deny suppression, reinstate the indictment and remand the matter for further proceedings.

On September 27, 1991 at 10:20 P.M., Police Officers Fleming and Lott, both in uniform, were on a rooftop observation post across the street from 303 West 154th Street, a six-story apartment building and drug-prone location, which was the focus of their investigation. With the aid of binoculars, Officer Fleming was observing the front of 303 West 154th Street while Officer Lott stood guard to make sure no one approached them from behind. Fleming observed two individuals approach defendant and hand him money in exchange for

some green-capped vials, which, based on his experience, Fleming believed to be crack.

Less than one minute later, two others approached and spoke to defendant briefly, after which he walked across the street toward an abandoned building, reached into a three-by-four-foot cardboard box "crushed up" in a pile of garbage, and removed a brown paper bag from the box. Fleming then observed defendant take "something" out of the brown bag and place the bag back in the box. At that point, defendant crossed the street to the two waiting individuals and again exchanged green-capped vials for money.

After observing this transaction, Officers Lott and Fleming left their post and drove their marked police car, parked nearby, to 303 West 154th Street, where both officers exited the police car. Lott detained defendant while Fleming crossed the street and recovered the brown bag, which, when opened, was found to contain 18 green-capped vials containing what appeared to be crack cocaine. Fleming then recrossed the street, handcuffed and searched defendant, recovering from his front pocket $130, including 45 one dollar bills. Officer Lott also handed Fleming an additional green-capped vial containing what appeared to be crack cocaine that he had recovered from the ground where defendant was standing.

In granting suppression, the hearing court found that defendant had standing to challenge the search of the paper bag since "he did not evince an intent to abandon the bag." It also found that although Officer Fleming had probable cause to arrest defendant based upon his rooftop observation of apparent drug sales, his partner, Officer Lott, did not because "no evidence was adduced * * * establishing that Officer Fleming in fact conveyed his observations of the defendant's conduct to Officer Lott prior to Officer Lott's arrest of the defendant" or that "Fleming had directed Officer Lott to arrest the defendant." Thus, the court suppressed all the evidence seized pursuant to the "unauthorized" arrest and dismissed the indictment.

On reargument, the court, citing *People v Kelly* (172 AD2d 458, *affd* 79 NY2d 899), again rejected the People's lack of standing argument and held that "the mere act of placing property in an area and walking a short distance away is insufficient to constitute an abandonment", and that the "secreting of an object * * * even if the hiding place is a trash receptacle" is not an abandonment. In addition, the court

again rejected the argument that Officer Lott had probable cause on the ground that the People failed to prove the existence of "any communication * * * between Officer Lott and Officer Fleming after Officer Fleming had observed the defendant's actions, but before the defendant's arrest." The court also suppressed the single vial found on the ground near the site of defendant's arrest, finding that defendant had abandoned it "in response to unlawful police action."

Both in its original decision and its decision on reargument, the hearing court held that defendant had standing to contest the search of the bag since he had not evinced an intent to abandon the bag. This was error. Property which has been intentionally abandoned is, of course, outside the scope of constitutional protection. *(See, People v Howard,* 50 NY2d 583, 592, *cert denied* 449 US 1023.) Abandonment does not become a suppression issue, however, unless a defendant who has manifested a sufficient degree of dominion and control to establish a legitimate expectation of privacy in the property takes some action, usually in response to a police presence, to separate himself from the property. *(See, e.g., People v Kelly,* 172 AD2d 458, *supra; People v Howard,* 50 NY2d 583, *supra.)* Thus, before a determination is made as to whether a defendant abandoned property or acted in response to police conduct, he must meet his burden of showing a legitimate expectation of privacy in the seized property prior to the act allegedly constituting abandonment. *(See, People v Ponder,* 54 NY2d 160; *People v Wesley,* 73 NY2d 351.)

Invocation of the exclusionary rule with respect to the Fourth Amendment's prohibition against unreasonable searches and seizures is limited, both by the Federal courts and the courts of this State, "to persons whose own protection has been infringed by the search and seizure." *(People v Wesley,* 73 NY2d 351, 355, *supra,* citing *Rakas v Illinois,* 439 US 128, 138; *People v Cefaro,* 21 NY2d 252, *revg* 28 AD2d 694 *on rearg on other grounds* 23 NY2d 283.) Thus, to establish standing, a defendant is required to demonstrate a legitimate expectation of privacy in the searched premises.

A legitimate expectancy of privacy is worthy of protection only if society at large accepts it as "objectively reasonable." *(California v Greenwood,* 486 US 35, 39-40; *see also, People v Reynolds,* 71 NY2d 552, 557.) Nor is "[w]hat a person knowingly exposes to the public * * * a subject of Fourth Amendment protection." *(Katz v United States,* 389 US 347, 351.) As the Court noted in *People v Wesley* (73 NY2d, *supra,* at 359), a

defendant who has "secreted property in an area open to the public" does not necessarily have a reasonable expectancy of privacy. The key factors in determining whether a defendant has a reasonable expectation of privacy in a certain place are "whether [he] took precautions to maintain privacy and whether [he] had the right to exclude other persons from access." *(People v Whitfield,* 81 NY2d 904, 906.) Defendant's placement of the bag back in the box, an action that was openly undertaken in full public view, and his return to a location across the street cannot be considered "precautions to maintain privacy." Moreover, defendant clearly lacked any "right to exclude other persons from access." Thus, there is no basis for the majority's conclusory statement that Officer Fleming's observation of "defendant in possession of the bag and taking actions to avoid anyone from finding it" were enough to confer standing.*

In the light of these principles, it is clear that defendant failed to show the requisite standing to challenge the seizure of the narcotics from the paper bag since there is nothing in this record to demonstrate a reasonable expectation of privacy in the cardboard box situated in the midst of a pile of garbage from which the bag containing the contraband was seized. In fact, the conclusory allegations in defendant's motion papers failed to allege any facts demonstrating a legitimate expectation of privacy either in the bag or in the pile of trash from which it was recovered and, thus, were insufficient to establish standing to contest the search of the bag. *(See, e.g., People v Gomez,* 67 NY2d 843.) And, as testified to at the hearing, defendant's actions belie any claim to a reasonable expectation of privacy in the cardboard box, bag or pile of garbage. As the evidence shows, defendant crossed the street to transact business, leaving the bag unguarded. While defendant periodically handled the bag to remove vials of crack for sale, for most of the period during Officer Fleming's observations the bag remained in the trash pile across the street from defendant, fully exposed on a public sidewalk to passing pedestrians, each of whom had access, no less than defendant's, to the bag. There was no evidence to indicate that defendant took any precautions to maintain privacy or exclude others from the cardboard box or bag. Indeed, when Officer Fleming picked

---

* As the majority itself recognizes, a showing of possessory or proprietary interest in the item seized is not determinative of the standing issue. *(People v Whitfield, supra,* at 906.)

up the bag to look inside, defendant did not, in any way, interfere or protest.

Moreover, the very nature of the property, a brown paper bag offering little if any protection against either accidental or deliberate intrusion *(see, People v Maldonado,* 76 AD2d 691, 699), and its location inside a cardboard box in a pile of garbage on the sidewalk are not compatible with a claim of expectation of privacy. Nothing in this record indicates that defendant ever intended to exclude others from the bag or that he ever asserted ownership of it.

Defendant is not, as the hearing court found, accorded standing merely by virtue of his having retrieved crack vials from the paper bag before placing it back in the cardboard box and returning to his waiting customers across the street. This fleeting and limited exercise of dominion and control over the bag, without more, does not establish a legitimate expectation of privacy in the bag. *(See, People v Whitfield,* 81 NY2d 904, *supra.)* And, since defendant's one-time possession of the bag is " 'too broad a gauge for measurement of Fourth Amendment rights' " *(United States v Salvucci,* 448 US 83, 92, quoting *Rakas v Illinois, supra,* at 142), there is "no inconsistency in simultaneous assertions by the government that the defendant possessed the charged contraband but lacked a legitimate expectation of privacy in the area from which it was seized." *(People v Wesley,* 73 NY2d, *supra,* at 357.)

Defendant's subjective expectation of regaining access to the bag at some later point would not establish a legitimate expectation of privacy. As noted, standing is determined by what society objectively accepts as a legitimate expectation of privacy. *(See, California v Greenwood,* 486 US, *supra,* at 39-40; *Rakas v Illinois,* 439 US *supra,* at 143, n 12.) The reasonable person would not believe that someone who places a paper bag in garbage on the public sidewalk without taking any measures to guard it or preclude others from taking it has a legitimate expectation of privacy in the bag.

Finally, and contrary to the hearing court's determination, the vial found on the ground in the area where defendant was arrested and the money recovered from him should not have been suppressed. The court held that the stop of defendant was unlawful because Officer Lott, the first to reach defendant, and who, unlike Fleming, had not observed defendant's activities from the rooftop, lacked probable cause since there

was "no actual communication" between the two officers and, therefore, Fleming's knowledge could not be imputed to Lott. This was error.

An arresting officer may arrest a suspect on the basis of information transmitted to him by another law enforcement officer which, either by itself or together with information known to the arresting officer, establishes probable cause. *(See, People Rosario,* 78 NY2d 583, 588-589, *cert denied* 502 US 1109; *People v Havelka,* 45 NY2d 636, 640.) The officer effecting the arrest "need not personally have possessed reasonable grounds to believe the defendant had committed a crime; it could suffice that someone, somewhere in the investigative hierarchy did." *(People v Bouton,* 50 NY2d 130, 136.) The "fellow officer" rule has its genesis in modern-day law enforcement techniques where police officers, "called upon to assist other officers[,] are reasonably entitled to assume that the officers who requested the assistance possessed the requisite information to support the requested action." *(People v Lopez,* 95 AD2d 241, 245.)

Here, Officer Fleming, based on his rooftop observations, had, as the hearing court conceded, probable cause to arrest defendant. *(See, e.g., People v McRay,* 51 NY2d 594.) Both Fleming and Lott had been stationed on the roof; Fleming's responsibility was to make observations through the binoculars while Lott's job was to stand guard. They never changed roles. They left the observation post together. After exiting the police car together, Fleming went directly to the area where defendant had left the bag while Lott proceeded to where defendant was standing to arrest him. Even though the record does not show a formal arrest directive from Fleming to Lott, the only reasonable inference from this chain of events is that Fleming communicated his observations to Lott and, by word or deed, directed Lott to hold defendant while he recovered the bag. The hearing court's conclusion that Lott, without any direction or communication from the partner with whom he was working and who had made the street observations, proceeded on his own to approach and hold defendant makes no sense.

Even, however, if one were to accept the hearing court's finding that, in leaving their rooftop observation post, the officers had no actual communication about the arrest they were about to make, Fleming's knowledge, as a matter of law, must be imputed to Lott. For Fourth Amendment purposes, knowledge is "mutually impute[d]" to all law enforcement

officers "working together on the scene and in communication with each other." *(United States v Woods,* 544 F2d 242, 260, *cert denied sub nom. Hurt v United States,* 429 US 1062.)

CARRO and ELLERIN, JJ., concur with TOM, J.; SULLIVAN, J. P., and ASCH, J., dissent in a separate opinion by SULLIVAN, J. P.

Order, Supreme Court, New York County, entered November 20, 1992, affirmed.