[622 NYS2d 694]

In the Matter of SHERMAINE J., a Person Alleged to be a Juvenile Delinquent, Respondent.

First Department, February 16, 1995

**APPEARANCES OF COUNSEL**

*Jane S. Earle* of counsel, New York City *(Pamela Seider Dolgow* with her on the brief; *Paul A. Crotty, Corporation Counsel* of New York City, attorney), for Presentment Agency, appellant.

*Carol Goldstein* of counsel, New York City *(Lenore Gittis, attorney)*, for respondent.

### OPINION OF THE COURT

WILLIAMS, J.

A petition was filed on July 26, 1993 against respondent, then 15 years old, charging him with acts, which if committed by an adult, would constitute the crimes of criminal possession of a controlled substance in the third, fifth, and seventh degrees, and criminal sale of a controlled substance in the third and fifth degrees.

At a hearing where respondent sought to suppress a paper bag containing three red-capped vials and $80 in United States currency seized at the time of his arrest, Police Officer Zhoroff testified. Officer Zhoroff stated that he was a six-year veteran of the New York City Police Department and that he had made approximately 50 arrests. He testified that he had been assigned to the Street Narcotics Enforcement Unit for 4½ months immediately preceding respondent's arrest, and had made 15 drug-related arrests during that time.

On July 21, 1993, he was stationed at an "observation post" located in an empty, window-encompassed room on the third floor of a building on the northeast corner of 15th Street and 9th Avenue. He had been assigned to this location because of the high incidence of drug activity known to occur there.

At approximately 10:30 P.M., Zhoroff, using binoculars, observed respondent on the northwest corner of 15th Street and 9th Avenue. He was approached by a tall black male wearing a plaid-colored shirt and they conversed. Respondent then walked over to the entrance of a garage on 15th Street, approximately 30 feet from the corner at 9th Avenue, remained there for about 15 seconds, and returned to the black male, who waited for him on the corner. Officer Zhoroff observed the respondent hand the black male an "item" in exchange for United States currency.

Officer Zhoroff continued to observe the black male as he walked away from respondent. Zhoroff observed him take a glass tube out of his pocket, put it in his mouth, light it, and smoke it. Realizing that the black male was probably smoking crack cocaine, Zhoroff radioed a description of him to his backup team, and he was subsequently apprehended and a crack pipe recovered from him.

Officer Zhoroff testified that five minutes later, he observed

an Hispanic male, currency in hand, approach the respondent. The two conversed briefly before respondent returned to the garage entrance, came back, and exchanged an item for the Hispanic man's currency. Zhoroff observed the Hispanic man cross the street and get into a car, at which time he radioed a description of the man and the car to backup officers, who then apprehended him and recovered from him a crack pipe and two red-capped vials of crack cocaine.

Officer Zhoroff then immediately radioed the backup with a description of the respondent so that they might apprehend him. Zhoroff testified that he did not witness respondent's arrest, but that he did see the arresting officer, Officer Hafner, recover a brown paper bag from a corner of the garage entrance.

Officer Hafner, who was the officer in radio contact with Officer Zhoroff and who arrested the black male, testified as to the transmissions received from Zhoroff. She stated that she arrested respondent, after he was described to her, across 15th Street from the garage entrance. Respondent was walking towards 10th Avenue when she approached and asked him what he had been doing on the 9th Avenue corner. His reply was that he was "waiting for a friend". Officer Hafner arrested respondent and recovered $80 from his pants pocket; she also retrieved from the corner of the left side of the garage entrance a brown paper bag containing three red-capped vials of crack.

The Family Court granted respondent's motion to suppress both the drugs and the money. Although it credited the officers' testimony, the court found that the evidence was improperly seized as a matter of law, citing *Matter of Kevin W.* (188 AD2d 301) in support of its view that the officer's observation of exchanges of unidentified items for currency merited some lesser degree of suspicion and inquiry, but not probable cause to arrest. The court, however, found that respondent did not intentionally abandon the brown paper bag containing the three crack vials.

Three issues are raised on this appeal: whether or not the officer had probable cause to arrest respondent; whether or not respondent abandoned the brown paper bag; and whether or not the petition was jurisdictionally defective.

"Probable cause requires, not proof beyond a reasonable doubt or evidence sufficient to warrant a conviction * * * but merely information which would lead a reasonable person who

possesses the same expertise as the officer to conclude, under the circumstances, that a crime is being or was committed" *(People v McRay,* 51 NY2d 594, 602). "[T]he basis for such a belief must not only be reasonable, but it must appear to be at least more probable than not that a crime has taken place and that the one arrested is its perpetrator, for conduct equally compatible with guilt or innocence will not suffice" *(People v Carrasquillo,* 54 NY2d 248, 254).

Analysis of the probable cause issue relative to a warrantless arrest based on police surveillance of street narcotics trafficking, begins with *People v McRay (supra),* where the Court of Appeals enunciated three "guideposts" relevant in assessing probable cause: The observation of a telltale sign of an illicit drug exchange, such as a glassine envelope; a high incidence of narcotics trafficking in the area; and the training and experience of the police officer *(People v McRay, supra,* at 601-602, 604). The Court also speaks of additional circumstances, such as money passed in exchange for a glassine envelope or furtive or evasive behavior on the part of participants in the alleged transaction *(People v McRay, supra,* at 604-605), which in combination with the "guideposts" may allow an inference of probable cause to be properly drawn.

In several cases, this Court has found that probable cause would not exist but for the presence of circumstances in addition to the three *McRay* factors. In other words, where one or more of the three *McRay* factors is weak or lacking, probable cause may be found in the totality of the circumstances *(People v Owens,* 155 AD2d 696, 697).

For instance, in *People v Shaw* (193 AD2d 390, *lv denied* 82 NY2d 853), a police officer with five years' experience and over 100 drug-related arrests observed defendant, at a drug-prone location, engage in four separate transactions within a 10-minute period, the defendant in each instance reaching into a crumpled white paper bag for unidentified objects which he exchanged for United States currency. The buyers were described by the officer as "furtive and nervous" *(supra,* at 390), and one of the buyers fled the scene when approached by the officers. This Court held that the buyer's flight escalated the officer's reasonable suspicion of criminal activity to the level of probable cause necessary to justify arrest.

In *People v Cedeno* (193 AD2d 540, *lv denied* 82 NY2d 715), a case involving the same officer and drug location as *Shaw (supra),* this Court held that after observing four transactions

involving exchange of an unidentified object for United States currency over a period of 30 to 40 minutes, the officer lacked probable cause but had reasonable suspicion sufficient to justify a stop and inquiry. When the stop and inquiry resulted in defendant's companion admitting that she was dealing crack and that the crack was in her pocket, it was held that the companion's admissions of drug sales clearly elevated the officer's suspicions to probable cause.

By way of contrast, where the *McRay* factors were somehow lacking and no additional indicia of the drug trade were alleged, this Court declined to find probable cause. Examples of these cases include *People v Wilson* (175 AD2d 15, *lv denied* 78 NY2d 1015) and *Matter of Kevin W.* (188 AD2d 301, *supra),* the case cited by the court below.

In *People v Wilson (supra),* this Court found that there was insufficient evidence to merit a finding of probable cause where an officer, with only two weeks of narcotics training and only two months of service on the Tactical Narcotics Team, had observed an exchange between defendant and another individual of an undescribed object and United States currency, saw no telltale signs of drug trafficking, and was making his first arrest at the particular drug-prone location.

In *Matter of Kevin W. (supra,* at 301), the case cited by the Family Court, this Court held that police officers lacked probable cause to arrest after observing the respondent from "a distance of a hundred feet" engage in furtive exchanges of unidentified objects for " 'what seemed to be currency' " with three different individuals who approached him in less than five minutes in a drug-prone area. We stated that those circumstances provided a sufficient basis to justify only a request for information, which, under *People v De Bour* (40 NY2d 210, 223), is the least intrusive level of warrantless police interference with private citizens.

Given the case law cited above, the instant circumstances: the drug-prone location; the experience of Officer Zhoroff; and the observation of two identical transactions where a person approached respondent, who then walked over to the garage entrance where he remained for a few seconds and returned with an item in his hand which he exchanged for currency, were sufficient to create reasonable suspicion justifying a stop and inquiry, despite the fact that the objects exchanged for cash were concealed from view *(People v King,* 200 AD2d 487, 488, *lv denied* 83 NY2d 873). However, the key here, which

escalated the level of suspicion to probable cause, was the observation, then arrest and seizure of property from the first purchaser immediately after his purchase. Officer Zhoroff's testimony that he observed the first purchaser leave respondent, immediately produce a glass tube and smoke what appeared to be crack cocaine, and that he radioed this information and a description of the purchaser to Officer Hafner, who arrested the purchaser and found a crack pipe in his possession, and the absence of an alternative explanation for the purchaser's transaction with respondent, in combination with all the other factors (People v Owens, supra), gave Officers Zhoroff and Hafner probable cause to arrest respondent.

■ ■ While we find, contrary to the hearing court, that probable cause existed for the arrest of respondent and that the search and seizure of the $80 from his person incident to that arrest was valid, we concur with the hearing court's finding that respondent did not abandon the brown paper bag recovered from the garage entrance.

The testimony of Officers' Zhoroff and Hafner established that the brown paper bag containing red-capped vials of crack was secreted in a six-inch space between the garage door and the sidewalk on the poorly lit street at approximately 10:30—11:00 P.M.; that respondent went to that location twice just prior to consummating the transactions with the two alleged drug purchasers; and that no one else was observed going near the garage entrance. Certainly this evidence shows, if anything, a proprietary interest in the bag, not an intent to abandon it (see, People v Mims, 205 AD2d 78). The only evidence of abandonment appears to be the fact that as Officer Hafner approached, respondent was walking toward 10th Avenue and away from the concealed bag; however, this Court has held that such conduct does not constitute abandonment (People v Mims, supra; People v Kelly, 172 AD2d 458, affd 79 NY2d 899).

Finally, respondent argues that the petition herein was jurisdictionally defective because it did not establish each element of the crime charged as per Family Court Act § 311.2 (3), and because the laboratory reports were not sworn to by the person who prepared them.

Family Court Act § 311.2 (3) states: "A petition, or a count thereof, is sufficient on its face when * * * non-hearsay allegations of the factual part of the petition or of any supporting

depositions establish, if true, every element of each crime charged and the respondent's commission thereof."

██ Specifically, he argues that the laboratory reports do not contain sufficient nonhearsay allegations that the substance seized from him was cocaine, since the person who signed the report does not attest to any personal knowledge of the substance in question. However, our recent decision in *Matter of Deshone C.* (207 AD2d 756, 758) held that a petition is not jurisdictionally defective where the laboratory report's certification clause contains the words " 'made by me' ", which indicate that the signer of the report certifies that the copy submitted in support of the petition is an accurate, complete copy of the original report *which he prepared.* Since the laboratory reports at issue contain the "made by me" language in the certification clause, this claim is without merit.

Also lacking merit is respondent's claim that the petition is defective and should be dismissed because the chemist's signature on the laboratory reports were neither made under oath nor notarized, but merely subscribed a form notice pursuant to Penal Law § 210.45. This issue was also addressed in *Matter of Deshone C. (supra),* where this Court held that such verification was sufficient, since the Court of Appeals determined in *People v Sullivan* (56 NY2d 378) that a form notice pursuant to Penal Law § 210.45 combined with the subscription of the deponent constitute the functional equivalent of a statement under oath and is sufficient to verify an instrument.

Accordingly, the orders of Family Court, New York County (George Jurow, J.), the first, entered August 30, 1993, suppressing physical evidence, and the second, entered on or about September 30, 1993, dismissing the petition, are unanimously reversed, on the law and the facts, without costs, the motion to suppress denied, the petition reinstated, and the matter remanded for further proceedings.

MURPHY, P. J., ROSENBERGER, ROSS and RUBIN, JJ., concur.

Orders, Family Court, New York County, entered August 30, 1993, and on or about September 30, 1993, reversed, on the law and the facts, without costs, the motion to suppress denied, the petition reinstated, and the matter remanded for further proceedings.