[640 NYS2d 885]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JAMES SCHLAICH, Respondent.

First Department, April 16, 1996

APPEARANCES OF COUNSEL

*David L. Jaffe* of counsel, New York City (*Alan Gadlin* on the brief; *Robert M. Morgenthau, District Attorney* of New York County, attorney), for appellant.

*Natalie Rea* of counsel, New York City *(Daniel L. Greenberg,* attorney), for respondent.

## OPINION OF THE COURT

WALLACH, J.

Housing Police Officer Paskewitz and her partner were working an overnight detail in October 1993, observing the neighborhood from a post atop a low-rise building (four or five stories) at East 119th Street and 1st Avenue in Manhattan. Officer Paskewitz had 60 to 70 narcotics-related arrests to her credit, and her team had already made 25 to 30 arrests involving narcotics transactions in this very neighborhood. Shortly after 1:00 A.M., she focused her attention, through binoculars, on defendant's activities in front of an all-night bodega at the well-lit intersection. A number of people were entering and exiting the bodega. Defendant was drinking a beer and meandering back and forth around the street corner, all the while in Paskewitz' view. At one point a man approached defendant, engaged him in conversation for a few seconds, and then handed him some money, whereupon defendant reached into his left jacket pocket and handed an unidentified object to the man. Officer Paskewitz could not see the object because it was concealed in defendant's fist. Five minutes later, defendant was approached by a woman who engaged him in conversation for a few seconds; defendant then took some items from his left jacket pocket and handed them to her, in exchange for money. Shortly thereafter, defendant engaged in conversation with a man across the street. When this man approached and handed defendant some money, defendant again reached into his left jacket pocket and handed him some items.

Believing she had just witnessed three drug transactions, Officer Paskewitz decided to arrest defendant. With the aid of her back-up team on the ground, she apprehended him in the vicinity; he was still holding the beer. A search of defendant's person yielded a brown paper bag from his left front pants pocket, containing 12 black-topped vials later determined to contain crack cocaine. Further search at the police station yielded 16 dollars and change, as well as a quantity of powdered cocaine wrapped in aluminum foil, and another wrapped in a small pink zip-lock bag.

Defendant was indicted for criminal possession of a controlled substance in the third and fifth degrees (possession with intent to sell). The People appeal from an order suppressing the seized evidence for lack of probable cause to search.

The Court of Appeals has laid down a three-pronged test for probable cause to search an individual who is believed to have participated in a drug transaction, where no drugs were actually seen (*People v McRay*, 51 NY2d 594). An inference of probable cause may be drawn where a trained and experienced police officer observes several deliveries of some "hallmark" of a drug transaction (in that case, glassine envelopes) in an area notorious for narcotics activity. The observation of money changing hands in such transactions is a further factor (*supra*, at 604).

In the case at bar, the training and experience of Officer Paskewitz and the high-drug-crime nature of the area were amply proven. The suppression court granted the motion because of the absence of a telltale physical sign that narcotics transactions had just taken place. The court ruled that the police observations gave them reasonable suspicion of criminal activity, and thus a right to stop and inquire (*see, People v Cedeno*, 193 AD2d 540, *lv denied* 82 NY2d 715), but absent such inquiry or some other indicia, such as defendant's furtive behavior or flight, or even suspicious conduct on the part of the buyers (*cf., People v Shaw*, 193 AD2d 390, *lv denied* 82 NY2d 759, 853; *People v Bittner*, 97 AD2d 33), reasonable suspicion was not elevated to the probable cause necessary to justify the arrest and search conducted here. We reverse because the test for probable cause was improperly applied.

In *People v McRay (supra)*, the Court of Appeals put an end to the notion that exchanges of objects for money in such a setting had to be viewed as equally susceptible of innocent behavior. Citing the "virtual explosion in drug trafficking in our society", the Court held that "[w]hatever the validity of this conclusion in the past, time and experience have proven it no longer viable" (51 NY2d, *supra,* at 602-603). In the 16 years since *McRay*, the drug epidemic has only intensified. Whereas *McRay* broke new ground in recognizing the probability that the hand-to-hand exchange of small packages for money in a drug-prone neighborhood is no longer innocuous behavior susceptible to innocent interpretation, experience has taught us that the packaging of choice for illicit narcotics continues to evolve—from glassine envelopes to tinfoil packets (*People v Balas*, 104 AD2d 1039), white envelopes (*People v Brown*, 124 AD2d 592, *lv denied* 69 NY2d 744), zip-lock bags (*People v Baldanza*, 138 AD2d 722, 724, *lv denied* 72 NY2d 856), clear plastic sandwich bags (*People v Jones*, 172 AD2d 265, 267, *lv denied* 78 NY2d 923), and vials used for crack cocaine (*People v Canosa*,

194 AD2d 392, *lv denied* 82 NY2d 715; *Matter of James P.*, 194 AD2d 467, *lv denied* 82 NY2d 659).

The time has come to end our fixation with packaging. "[T]he jurisprudence in this Fourth Amendment area has moved beyond such niceties as distinctions based on the color or degree of opacity of the envelope" (*People v Shaw*, 193 AD2d, *supra*, at 391). "In a probable cause analysis, the emphasis should not be narrowly focused on a recognizable drug package or any other single factor, but on an evaluation of the totality of circumstances" (*People v Graham*, 211 AD2d 55, 58, *lv denied* 86 NY2d 795). Sophisticated street sellers of narcotics, who now deal in small items of contraband which are dispensed from crumpled paper bags and are easily concealable in the palm of the hand, "should not enjoy an immunity from arrest or search merely because they are able to conceal their wares during the exchange; *concealment is itself a common characteristic of illegal conduct*" (211 AD2d, *supra*, at 59; emphasis added).

The lesson of *McRay* and its progeny is that in order for society to keep pace with the war on illegal drugs, law enforcement must be as flexible and creative as the drug traffickers. The Court of Appeals issued that call to action 16 years ago, indicating that the "alarming pervasiveness of drugs in our society" necessitated not an "obliterating" of Fourth Amendment protections, but an increasing awareness of what constitutes the probable cause to believe that an illicit drug transaction is taking place (*People v McRay*, 51 NY2d, *supra*, at 603). The evolution of case law since 1980 now permits us to credit, as part of the totality of circumstances, the testimony of a trained and experienced police officer as to her observations of several hand-to-hand transactions (*cf., People v Washington F.*, 167 AD2d 554) in a drug-prone neighborhood in the wee hours of the morning. Such observations may result in probable cause for arrest and search based on a reasonable belief (*see, McCray v Illinois*, 386 US 300, 304; *People v McRay*, 51 NY2d, *supra*, at 602) of criminal possession of a controlled substance with intent to sell, even where the objects (or their packaging) transferred in the observed transactions cannot be precisely identified from a distance (*People v Owens*, 155 AD2d 696).

Accordingly, the order of Supreme Court, New York County (Ronald A. Zweibel, J.), entered May 24, 1994, which granted defendant's motion to suppress physical evidence seized in connection with his arrest, should be reversed, on the law, the motion should be denied, and the case remanded for further proceedings on the indictment.

SULLIVAN, J. P., RUBIN and TOM, JJ., concur.

Order, Supreme Court, New York County, entered May 24, 1994, reversed, on the law, defendant's motion to suppress denied, and the case remanded for further proceedings on the indictment.