[650 NYS2d 120]

In the Matter of Devon H., a Person Alleged to be a Juvenile Delinquent, Respondent.

First Department, November 26, 1996

## APPEARANCES OF COUNSEL

*Stephanie Freeman Goldstein* of counsel *(Francis F. Caputo* on the brief; *Paul A. Crotty, Corporation Counsel* of New York City, attorney), for appellant.

*Peter Wilner* for respondent.

## OPINION OF THE COURT

MILONAS, J. P.

In the course of patrolling the Taft Housing Project one evening, a housing police officer observed respondent and another individual standing by a chain link fence behind 1694 Madison Avenue. From a distance of approximately 50 or 60 feet, in a well-lit parking lot, the officer saw respondent reach into a fence post approximately $2^1/2$ feet high, remove something and give it to the second individual, who handed him something in

return. Both individuals then walked away toward Madison Avenue. Believing this to be a drug transaction, the officer moved closer, to a distance of approximately 15 feet from the fence post.

After 10 or 15 minutes, respondent returned with another individual, again reached into the same fence post and removed what the officer, crouching behind a parked car, could now see were small white envelopes, approximately two inches wide. Respondent handed the envelopes to the second individual, who gave him what appeared to be United States currency in return, and the two returned to Madison Avenue. After 10 or 15 seconds, the officer followed and, finding respondent standing on Madison Avenue, approached and asked him for his name and address, inquiring also as to what he was doing. Respondent gave only his name. The officer then told respondent that he had just seen him selling drugs, whereupon he took respondent by the arm and led him back to the fence post, where the officer reached in and recovered four envelopes stamped "FW" and exuding a distinctive sweet smell associated with PCP. He then placed respondent under arrest. Laboratory tests later confirmed that the four envelopes contained PCP.

After the suppression hearing, the Family Court denied the motion to suppress the physical evidence, finding that, based on the officer's observations, there was probable cause to seize respondent and recover the items in the fence post. The Family Court did grant the motion to suppress statements made by respondent at the precinct prior to receiving *Miranda* warnings (an issue not contested on this appeal).

Following the fact-finding hearing, however, the Family Court *sua sponte* reopened the suppression hearing solely for the purpose of requesting legal memoranda from the parties, advising them that, having reviewed the applicable case law, it had serious reservations regarding its original decision. At the following court appearance, the Family Court announced its decision to grant the motion to suppress the physical evidence, finding that there was no probable cause to arrest respondent, and that the seizure of the envelopes was therefore not incident to a lawful arrest. Moreover, citing two First Department cases, *Matter of Shermaine J.* (208 AD2d 158) and *People v Mims* (205 AD2d 78), the Family Court found that the envelopes had not been "abandoned" by respondent, and therefore their discovery could not elevate "reasonable suspicion to probable cause." Without the physical evidence, the presentment agency could not proceed, and the petition was dismissed.

■ As a threshold matter, we find that appellant is not precluded from pursuing this appeal, as respondent claims, on the ground that Family Court Act § 365.1 (2) (c) limits a presentment agency to appealing only those dismissal orders entered *prior* to the commencement of the fact-finding hearing. We have previously held, in *Matter of Kevin W.* (188 AD2d 301, 302), that where, as here, the Family Court denies a suppression motion following a hearing and then reopens it *sua sponte* following the fact-finding hearing, the presentment agency has no choice but to pursue its appeal at that point.

■ As to the substantive suppression issues, we find that the motion to suppress was correctly denied in the first instance, and we therefore reverse, deny the motion to suppress and reinstate the petition. The officer's observations did give rise to probable cause and, in addition, respondent lacked standing to challenge the recovery of the envelopes in the fence post.

We begin our analysis with *People v McRay* (51 NY2d 594), in which the Court of Appeals set forth guidelines by which to determine whether an officer's observations of suspected drug activity give rise to probable cause. The three factors to be considered include the observation of a "telltale" sign of illicit drug activity, such as the passing of a glassine envelope; the incidence of narcotics trafficking in the area; and the training and experience of the officer making the observations (51 NY2d, *supra*, at 601-602). Other relevant factors include the exchange of money and any furtive or evasive behavior on the part of the participants (51 NY2d, *supra*, at 604). Of course, in the almost 20 years since *McRay* was decided, the drug trade has changed, and in addition to the glassine envelope, the tinfoil packet, the small white envelope, the zip-lock bag and the vial have come to be commonly associated with drug transactions on the street (*People v Schlaich*, 218 AD2d 398, 400; *People v Graham*, 211 AD2d 55, 58, *lv denied* 86 NY2d 795).

In the instant case, all the *McRay* factors are present. An officer with $1^1/_2$ years' experience, who had participated in approximately 12 PCP-related arrests, knew that PCP was commonly packaged in small white envelopes and also knew the spot to be a drug-prone location based on the volume of 911 calls received and tenant complaints of drug activity, observed what appeared to be a typical street sale. Because of the distance, however, he could not actually identify the items exchanged. Moving closer, he saw a second transaction, which in all respects mirrored the first, but this time he saw that

what respondent removed from the fence post were small white envelopes and that what respondent received in exchange was United States currency. In addition, respondent's over-all behavior—including walking away from and then returning to the fence post, bringing prospective buyers behind the building and completing both transactions quickly—was "typical of a drug dealer plying his trade in a known drug location" (*People v Graham*, 211 AD2d, *supra*, at 60). The use of a "stash," rather than keeping the drugs upon his person, is yet another typical characteristic of a street sale and has been considered "furtive behavior" further reinforcing the conclusion that a defendant is engaged in selling drugs (*People v Graham*, 211 AD2d, *supra*, at 60; *People v Perez*, 227 AD2d 359; *People v Carmona*, 208 AD2d 369, 371, *lv granted* 84 NY2d 1041, *appeal dismissed* 85 NY2d 960). Thus, all the *McRay* criteria were met, and, in such circumstances, we have said that probable cause "[c]learly" exists (*People v Graham*, 211 AD2d, *supra*, at 58).

Indeed, in *People v Graham* and *People v Schlaich* (218 AD2d 398, *supra*), and again in *People v Jones* (219 AD2d 417, *lv granted* 88 NY2d 944), we found that probable cause existed despite the fact that the item exchanged could not be observed. In each of these cases, the drug involved was crack cocaine, commonly packaged in small vials easily concealable in the hand. Notwithstanding the inability to see (and recognize) the item, the totality of the circumstances in each case gave rise to probable cause. Just as no single factor—even observing the item exchanged—is dispositive on the issue of probable cause, there is no talismanic number of transactions that must be observed before probable cause will be established. Five transactions were observed in *Graham*, three in *Schlaich*, and only one in *People v Jones*. In the instant case, the two transactions observed were sufficient, given the totality of the circumstances and the presence of all the relevant factors set forth in *McRay (supra)*, including the sighting of the small white envelopes in which PCP is commonly packaged.

██ With respect to the issue of standing, which was never specifically addressed by the Family Court but has been properly preserved by appellant, it is clear that, under *People v Mims*, decided with *People v Ramirez-Portoreal* (88 NY2d 99, *revg People v Mims*, 205 AD2d 78, *supra*), respondent lacked standing to challenge the seizure of the envelopes in the fence post.

In *Mims*, the defendant was selling crack from a paper bag kept in a cardboard box atop a pile of trash. For each transac-

tion that was observed, defendant crossed the street, retrieved the bag from the box, took something out of it and then replaced the bag inside the box. This Court had found that, by maintaining control over the bag, defendant had standing to contest the search and that the People had not shown defendant's abandonment of the bag (205 AD2d 78, 81-82, *supra*). Similarly, in *People v Sanchez*, decided by the Court of Appeals with *Mims* and *Ramirez-Portoreal*, the defendant placed a package that "bore the characteristics of narcotics packaged for street sale" into the exhaust pipe of a parked van and walked a few feet away (88 NY2d, *supra*, at 106). The Criminal Court suppressed the drugs without specifically addressing the standing issue, finding that defendant had not abandoned the property. Appellate Term held that standing was established by possession of the bag moments before being detained and by remaining close to the bag after placing it in the exhaust pipe.

The Court of Appeals reversed in both cases, explaining that control or physical possession alone does not confer standing upon a defendant. Rather, there is a two-prong test that must be met in order to challenge the validity of a search. The first prong, a subjective component, is "did *defendant* exhibit an expectation of privacy in the place or item searched" (88 NY2d, *supra*, at 108). The second prong is an objective component: "does society generally recognize defendant's expectation of privacy as *reasonable*" (88 NY2d, *supra*, at 108). That is, regardless of defendant's subjective expectations, is the expectation of privacy justified under the circumstances.

In both cases, the Court of Appeals pointed out, while defendant may have exhibited a subjective expectation of privacy in the place or item searched—the bag in the trash pile in *Mims* and the exhaust pipe in *Sanchez*—neither expectation was objectively reasonable. Therefore, neither defendant had standing to challenge the propriety of the seizure. Respondent in the instant case, in keeping the envelopes of PCP inside the fence post, may have had a subjective expectation of privacy in the fence post, but, applying the Court of Appeals *Mims* and *Sanchez* analysis, such expectation of privacy is not objectively reasonable. The fence post was in an open area, easily accessible to the public at large, and the post itself was open at the top. All the officer had to do to retrieve the drugs was reach into the top of the fence post with his fingertips, just as he had seen respondent do.

The Court of Appeals also held that in both *Mims* and *Sanchez* the question of abandonment, which had been reached

by the suppression courts, did not even arise because there was no legitimate expectation of privacy in the paper bag in the trash pile or the exhaust pipe. The Family Court here, which had relied on the Appellate Division decision in *Mims* in making its determination, made a similar finding of no abandonment. This question should not have been reached in light of the fact that defendant lacked standing to challenge the seizure. We note also that the second case cited by the Family Court, *Matter of Shermaine J.* (208 AD2d 158, *supra),* and upon which respondent relies, does not change the result we reach today. That case also cited the *Mims* decision, now reversed, in reaching its determination regarding abandonment without first determining whether defendant had a legitimate expectation of privacy in the place searched.

Accordingly, the order of the Family Court, New York County (Ruth Jane Zuckerman, J.), entered April 5, 1995, which granted respondent's motion to suppress physical evidence and dismissed the petition, should be reversed, on the law, without costs, the motion denied and the petition reinstated.

ELLERIN, RUBIN, ROSS and NARDELLI, JJ., concur.

Order, Family Court, New York County, entered April 5, 1995, unanimously reversed, on the law, without costs, the motion to suppress physical evidence denied and the petition reinstated.