■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v EZZARD MURRAY, Respondent. [682 NYS2d 154] —Order, Supreme Court, Bronx County (Ira Globerman, J.), entered on or about September 23, 1997, granting defendant's motion to suppress physical evidence, unanimously reversed, on the law and the facts, the motion denied, and the matter remanded for further proceedings.

At around 1:00 P.M., on April 19, 1996, plainclothes officer John Muniz was patrolling in an unmarked car with fellow Anti-Crime Unit members, Sergeant Gannon and Officer Tufari. They responded to a radio report of a man carrying a bag with a gun in the schoolyard of P.S. 146, which is located on Cauldwell Avenue in the Bronx. A few minutes later, the officers received another transmission saying that there was no such person in the schoolyard. Officer Muniz's unmarked car continued to circle the area for about half an hour, looking for the man described in the radio run.

Officer Muniz spotted defendant walking with a companion along 163rd Street towards Cauldwell Avenue. Defendant was carrying a black bag. The police car pulled up near defendant and cruised alongside him for half a block until he reached 955 Cauldwell Avenue, which took about a minute. Officer Muniz testified at the suppression hearing that defendant became

"fidgety" when he saw the car approach and kept looking at the car. Defendant stopped at 955 Cauldwell Avenue, a small residential building, and went through the outer door of the building's glass vestibule. He tried to gain entrance to the building, but the inner door was locked. Officer Muniz then saw defendant leave his bag on the floor inside the vestibule and leave the building.

Officer Muniz got out of the car and approached defendant on the street, identifying himself as a police officer. He asked defendant, "What about your bag? You forgot your bag," and defendant responded, "What bag?"

While Sergeant Gannon and Officer Tufari remained with defendant, Officer Muniz retrieved the bag from the vestibule. When he picked it up, he could tell from its weight that it did not contain a gun. He opened the bag and discovered two clear bags of a substance that appeared to be cocaine. Defendant was then frisked for weapons and placed under arrest. On his person were found 1,000 glassine envelopes and $330 in cash.

At the *Mapp* hearing, the court found that while the radio run concerning the armed man was too stale to be a lawful basis for approaching defendant, the officer's observation of defendant's conduct—namely that defendant was nervous at the car's approach and subsequently left his bag in the vestibule—provided an objective credible reason to request information (*People v De Bour*, 40 NY2d 210, 223). On the other hand, the court held that defendant's response to Officer Muniz's question about the bag was too equivocal to justify a search of the bag. The hearing court rejected the People's argument that defendant abandoned the bag, since he was still in close proximity to it and only moments had elapsed between his depositing it in the building and being questioned by the police. We disagree with the hearing court's conclusion with respect to abandonment, and therefore find that the motion should have been denied.

A defendant is deemed to have abandoned property when he has waived his expectation of privacy in the object or place searched by voluntarily and knowingly discarding the property (*People v Ramirez-Portoreal*, 88 NY2d 99, 110). At a suppression hearing, the court must look at the totality of the circumstances rather than examining selected facts in isolation (*see, Matter of Devon H.*, 225 AD2d 135, 139). Moreover, in determining whether the People have proven defendant's abandonment of the property in question, the hearing court must not reject the People's reasonable interpretation of defendant's behavior simply because other plausible explanations may exist (*People v Pugh*, 243 AD2d 360, 361).

Denial of ownership of or connection to the property, while not dispositive (*see, People v Ramirez-Portoreal, supra,* at 110) is one indication that a defendant intended to abandon it (*People v Osborne,* 194 AD2d 427, 428, *lv denied* 82 NY2d 724 [defendant abandoned bag by denying that he owned it or brought it onto bus]), particularly when coupled with physical relinquishment of the property (*People v Morales,* 243 AD2d 391, 392, *lv denied* 91 NY2d 877). In *Morales,* having observed plainclothes police lawfully following the taxi he was in, defendant got out, dropped his backpack in the street and continued walking away. When asked by the officer whether the bag was his, he denied it. We found the officer's search of the bag was permissible because defendant abandoned it.

Here, the hearing court erroneously ruled that no abandonment took place because it could imagine a plausible innocent explanation for each of defendant's acts in isolation, while ignoring the relationship between them. It is true, as defendant suggests, that people sometimes leave their bags in the vestibule of a building as they step outside to hail a taxi, smoke a cigarette, or await another's arrival, though defendant has not claimed he was engaged in any of these activities. However, this is because such people have some connection with the building in question and need to remain in contact with it (e.g., it is raining and they want to protect their bags, or they work there and are on a cigarette break), unlike defendant, who did not have the key and seemed to have picked the building at random. Furthermore, he did not linger outside the building where his bag was deposited, but walked away, leaving his bag visible and unattended in a publicly accessible area. This fact distinguishes the instant case from *People v Carter* (133 AD2d 230), on which the hearing court relied, because in *Carter* the defendant placed his bag in a doorway but remained less than two feet from the doorway as he peered around the corner.

An innocent explanation becomes even less plausible in light of defendant's response, "What bag?" Again, though the hearing court was correct that this is not an explicit denial of ownership, the context of the statement suggests otherwise. Viewed overall, these circumstances evinced an intent to abandon the bag. Concur—Sullivan, J. P., Rosenberger, Wallach and Tom, JJ.